UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYRONE WELCH,

                Plaintiff,

-against-

CITY of PEEKSKILL and ANDREW Y. STEWART, individually.

                Defendants.

**OPINION AND ORDER**

21-CV-07230 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Tyrone Welch ("Plaintiff") initiated this action pursuant to 42 U.S.C. § 1983 against the City of Peekskill (the "City") and Andrew Y. Stewart ("Stewart" and together, "Defendants") by the filing of a Complaint on August 27, 2021. (Doc. 1, "Compl."). Plaintiff asserts separate claims for First Amendment retaliation and municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*"). (*See generally* Compl.).

On October 4, 2022, the parties filed a joint Rule 56.1 Statement. (Doc. 30, "56.1 Smt."). On January 30, 2023, in accordance with the briefing schedule set by the Court, Defendants served their motion for summary judgment on Plaintiff. (Doc. 36; Doc. 37, "Def. Br."; Doc. 38; Doc. 39; Doc. 40, "Field Decl."). Plaintiff served his opposition to Defendants' motion for summary judgment on February 21, 2023. (Doc. 41, "Pl. Br."; Doc. 42, "Pl. Decl."; Doc. 43). Defendants' motion was fully submitted on March 6, 2023, upon the filing of their motion papers, Plaintiff's opposition, and their reply brief (Doc. 44, "Reply"; Doc. 45). On March 10, 2023, Defendants filed a notice of supplemental authority in connection with their motion for summary judgment. (Doc. 46).

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment.

Plaintiff has been employed as a Laborer with the City of Peekskill for 14-15 years. (56.1 Stmt. ¶ 1). The City has a written policy regarding employees' use of social media both on and off the job (the "Social Media Policy"). (*Id*. ¶ 26). On March 23, 2021, Welch was given a written reprimand ("Reprimand") concerning his violations of the Social Media Policy. (*Id*. ¶¶ 63, 100). The Reprimand specifically identified four social media posts from Plaintiff's Facebook or Instagram accounts in January 2021: (i) a picture of Andre Rainey ("Rainey")—the Mayor of the City at the time—and a quotation from Martin Luther King, which Plaintiff intended to suggest that "Rainey was more in love with money than with justice"; (ii) a photograph of Rainey with a news story about Rainey not seeking re-election with the added text "after selling out now I can leave. Job done. It only took me two terms to sell a black community youth center"; (iii) a photograph of Rainey with the added text "I sold a black community youth center because I'm a sellout"; and (iv) a photograph of former governor Andrew Cuomo shaking hands with Rainey with the added text "Massa isa did it! Massa Cuomo, isa did it sir. Massa we still going forward with selling public housing?" (collectively, the "Social Media Posts"). (*Id*. ¶¶ 5, 41, 44, 46, 61, 65). The Reprimand was issued without a notice of discipline but warned that violations of the Social Media Policy may result in future disciplinary action. (*Id*. ¶ 105; Field Decl. Ex. L). The Reprimand was removed from Plaintiff's personnel file on September 23, 2022, pursuant to the collective bargaining agreement between the City and the Union ("CBA"). (56.1 Stmt. ¶ 106).

This litigation followed.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[1] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial. . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts. . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

## ANALYSIS

I. <u>First Claim for Relief: First Amendment Retaliation</u>

A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected

speech." *Cox v. Warwick Valley Cent. School Dist.,* 654 F.3d 267, 272 (2d Cir. 2011); *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *6 (S.D.N.Y. Jan. 8, 2021).

Regarding the first element (First Amendment protection), the protected status of speech presents a question of law. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). Here, Plaintiff's personal social media posts which criticized the Mayor's political actions constitutes speech as a citizen on matters of public concern (as opposed to statements made by an employee seeking personal redress), and is therefore protected by the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Defendants contend that Plaintiff's "racially offensive" speech is not protected by the First Amendment pursuant to the Supreme Court's decision in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). (Def. Br. at 16-19). However, Defendants' conclusory assertion that the racist imagery in Plaintiff's fourth Social Media Post "had the potential to disrupt the City's operations if not addressed" (Def. Br. at 19), fails to meet the burden under *Pickering* to show "that the speech threatens to interfere with government operations." *Kantha v. Blue*, 262 F. Supp. 2d 90, 105 (S.D.N.Y. 2003). Defendants also argue that the Social Media Posts are not protected because they contain false statements about the sale of the Kiley Center, a community youth center located in Peekskill, which was actually leased for a term of 50-60 years. (Def. Br. at 19-20; 56.1 Stmt. ¶¶ 13, 49). "False speech is still entitled to First Amendment protection, as long as it is not made with knowledge or reckless disregard of its falsity." *Bovell v. City of Mount Vernon, New York*, No. 21-CV-01621, 2023 WL 3559544, at *13 (S.D.N.Y. May 18, 2023). Here, an issue of fact remains concerning whether Plaintiff knowingly made false statements in the Social Media Posts when referencing the sale (rather than long-term lease) of the Kiley Center.

With respect to the second element (adverse action), the inquiry for a First Amendment retaliation claim is whether the alleged adverse action "would deter a similarly situated individual

5

of ordinary firmness from exercising his or her constitutional rights." *Connelly v. County of Rockland*, 61 F.4th 322, 325 (2d Cir. 2023). "[R]eprimands are often adverse employment actions," but not "all reprimands are, as a matter of law." *Id*. at 327. "The question of whether a *particular* criticism or reprimand qualifies as an adverse employment action will often be a fact-intensive inquiry for the jury." *Id*. at 326 (emphasis in original). Here, the Reprimand was signed by Stewart—the City Manager at the time—who Plaintiff had never known to get involved in disciplining Laborers. (Pl. Decl. ¶¶ 3, 8, 11-13). The Reprimand, *inter alia*, explained Plaintiff's violations of the Social Media Policy and warned that "failure to comply immediately with [the Social Media Policy] may result in future disciplinary action." (56.1 Stmt. ¶¶ 93-94, 97, 100, 102; Field Decl. Ex. L). The Reprimand did not result in a loss of any pay or benefits or suspension from employment, and was removed from Plaintiff's personnel file 18 months later. (56.1 Stmt. ¶¶ 106-110). On this record, a reasonable jury could conclude that the Reprimand—especially considered in the context of the City Manager's direct involvement—constituted an adverse employment action.[2] Accordingly, summary judgment is inappropriate on this ground.[3]

Lastly, there is no dispute that the third element (causal connection) is satisfied given that the Reprimand was issued in response to the Social Media Posts. *See Morrison v. Johnson*, 429

---

[2] *See i.e. Millea v. Metro-N. R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) ("A formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy. A reasonable jury could conclude as much even when, as here, the letter does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently."); *see also Cole-Hatchard v. Cnty. of Rockland*, No. 17-CV-02573, 2019 WL 1300814, at *11 (S.D.N.Y. Mar. 21, 2019).

[3] Plaintiff argues in the alternative that the chilling of his speech is a basis on which to deny summary judgment. (Pl. Br. at 24-25). Plaintiff must demonstrate some actual, non-speculative chilling of his speech. *See A.F. v. Kings Park Cent. Sch. Dist.* 341 F. Supp. 3d 188, 200 (E.D.N.Y. 2018). Here, Plaintiff's testimony that he continued to post on social media but "not as much as [he] once was on a political side of things," including that he generally refrained from posting about new real estate developments in the city, is insufficient to establish an actual, non-speculative injury. (Field Decl. Ex. C at 242:9-244:7).

F.3d 48, 51 (2d Cir. 2005) (plaintiff must show "the speech was at least a substantial or motivating factor in the [adverse employment action]").

II. Second Claim for Relief: *Monell*

Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020). Here, it is undisputed that the Social Media Policy that forms the basis for Plaintiff's First Amendment claim is the policy of the City of Peekskill. (56.1 Stmt. ¶ 26). Further, the Court has found a triable issue of fact exists as to the underlying constitutional violation. Accordingly, the Court denies summary judgment as to Plaintiff's *Monell* claim.

III. Qualified Immunity

The affirmative defense of "[q]ualified immunity[4] protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quoting *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013) (internal quotation marks omitted). Here, Stewart merely applied the Social

---

[4] Despite Defendants' failure to plead qualified immunity as an affirmative defense in their Answer, the Court will in its discretion consider Stewart's assertion of qualified immunity. *See Colon v. City of New York*, No. 16-CV-04540, 2023 WL 6497650, at *5 (S.D.N.Y. Oct. 5, 2023) (declining to find that defendants have waived the defense of qualified immunity where defendants did not raise qualified immunity in their motion to dismiss, answer, or motion for summary judgment, but did raise it in the pretrial order); *see also Anthony v. City of New York*, No. 00-CV-04688, 2001 WL 741743, at *7 (S.D.N.Y. July 2, 2001), *aff'd*, 339 F.3d 129 (2d Cir. 2003).

Media Policy to Plaintiff's social media posts which were deemed to be racist and false. (Field Decl. Ex. D at 102:6-16, 103:2-6). Stewart's actions did not violate any clearly established statutory or constitutional rights of which reasonable persons would have known. The Court concludes that Stewart's enforcement of the Social Media Policy as to Plaintiff was objectively reasonable, and he is entitled to immunity from this suit under § 1983. *See i.e. M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 872 F. Supp. 2d 264, 293-94 (W.D.N.Y. 2012), *aff'd sub nom.*, 529 F. App'x 20 (2d Cir. 2013) (granting summary judgment as to individual defendants on the basis of qualified immunity where defendants enforced the fire department's drug testing policy). Accordingly, Plaintiff's claims are dismissed to the extent they are asserted against Stewart.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED as to the City of Peekskill and GRANTED as to Stewart.

Plaintiff and the City of Peekskill are directed to meet and confer and comply with Rules 6(A) and 6(B) of the Court's Individual Practices (rev. June 23, 2023) by filing the documents required therein, which include a joint pretrial order, proposed joint *voir dire* questions, joint requests to charge, joint verdict form, and any motions *in limine*, on or before February 14, 2024. Opposition to any motions *in limine* is due February 28, 2024. A pretrial conference has been scheduled for April 24, 2024 at 2:30 p.m. to be held in Courtroom 520 of the White Plains courthouse.

---

[5] Defendants argue, and the Court agrees, that punitive damages are not available for the claims asserted against the remaining Defendant–City of Peekskill. (Def. Br. at 26). *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006) ("[A] municipality . . . is immune from a claim for punitive damages . . . ."); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 309 (S.D.N.Y. 2001) ("Punitive damages are not available from a municipality.").

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 36 and terminate Stewart as a Defendant in this case.

SO ORDERED:

Dated:  White Plains, New York
January 15, 2024

_____
PHILIP M. HALPERN
United States District Judge

9